**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**JAMES BRIDGES** **PLAINTIFF**

**v.** **CASE NO. 4:07cv01060 BSM**

**OMEGA WORLD TRAVEL, INC.** **DEFENDANT**

**ORDER**

Defendant Omega World Travel, Inc. ("Omega") moves for the dismissal of plaintiff James Bridges's complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim [Doc. No. 33]. Bridges has responded [Doc. No. 43], and Omega has replied [Doc. No. 45]. For the following reasons, Omega's motion is denied.

I. BACKGROUND

The United States government has a number of procedures that are intended to save tax-payers money. To reduce federal travel costs, the government enters into what are referred to as travel service solutions ("TSS") contracts with private travel agencies. These TSS contracts authorize private travel agencies to arrange travel for federal employees.

The government also contracts with private airlines to establish set fares for flights between specific cities. These fares are called city pair fares and are divided into two classifications: (1) discounted unrestricted fares ("Unrestricted Fares"); and (2) capacity controlled fares ("Controlled Fares"). Controlled Fares are generally much less expensive than Unrestricted Fares, but are limited in number. Otherwise both fares are unrestricted.

When travel agents book airline tickets for federal employees, they are required to first look for available city pair fares.

Omega is one of the travel agencies with which the government has contracted to book travel for its employees. Its contract with the government requires Omega, with limited exceptions, to book city pair fares for federal employees. Further, Omega's government contract, as well as Department of Justice ("DOJ") financial management policy, requires Omega to book a Controlled Fare for the government employee when a Controlled Fare is available and meets the travel needs of the employee. The government employee, however, does have the option of declining the Controlled Fare.

Bridges is an agent with the Federal Bureau of Investigation ("FBI"), and uses Omega to book airline tickets for his business trips. He brings this case against Omega pursuant to the False Claims Act ("FCA") which permits private actors to bring suit against anyone who, through a fraudulent claim, benefits or seeks to benefit monetarily at the expense of the United States. These private actors are referred to as "relators."

In his complaint, Bridges alleges that on two separate occasions, Omega violated its contract with the government by booking him or quoting him more expensive airline tickets when less expensive tickets were available. He claims that, on the first occasion, Omega fraudulently booked him for an Unrestricted Fare when the Controlled Fare was available, and on the second occasion, Omega fraudulently quoted him the Unrestricted Fare when the Controlled Fare was available.

Specifically, Bridges asserts that he contacted Omega on July 19, 2007, requesting a ticket from Dallas, Texas to Washington, D.C. The government has a negotiated city pair fare between these two cities. Bridges states that he was booked an Unrestricted Fare at a cost of $870.80. Noticing that this fare was too expensive, Bridges contacted the airlines and discovered that the lower priced Controlled Fare was available. He then informed Omega of the cheaper Controlled Fare and was booked accordingly at a cost of $446.80.

On August 10, 2007, Bridges again contacted Omega. This time, he requested a ticket from Dallas, Texas to Las Vegas, Nevada. The government has a negotiated city fare pair between these two cities. When Omega's government account branch manager, Joy Borja, quoted him a price of $538.30 for the flight, he again contacted the airlines and was informed that the lower priced Controlled Fare was available for $268.30. It is not clear, from the record, whether Bridges was booked on the flight from Dallas to Las Vegas.

Bridges alleges that Omega violated § 3729(a)(1) of the FCA on the two occasions described above. Section 3729(a)(1) provides that "[a]ny person who . . . knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval . . . is liable to the United States Government . . ." Bridges maintains that Omega was aware of the lower priced fares, and intentionally failed to alert him to them, thereby presenting a false or fraudulent claim in violation of § 3729(a)(1).

Omega moves to dismiss Bridges's complaint, asserting that (1) subject matter jurisdiction does not lie in this court and (2) Bridges has failed to state a claim.

## II.  STANDARD

"[A] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Id*.  "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 556.

## III.  DISCUSSION

The FCA was recently amended by the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617.  Although the sections of the FCA at issue in this case were amended, those amendments did not have retroactive application.  Therefore, the FCA is interpreted herein as it existed prior to the 2009 amendments.  *See Miller v. Fed. Emergency Mgmt. Agency*, 57 F.3d 687, 689 (8th Cir. 1995) ( holding "[r]etroactivity is not

favored in the law" and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires [such a] result").

A.   Subject Matter Jurisdiction

In his complaint, Bridges maintains that jurisdiction is proper with this court because the claim arises under 31 U.S.C. § 3729 and the *qui tam* provisions of 31 U.S.C. §§ 3730 and 3731.  Omega moves to dismiss the complaint, arguing that this court lacks subject matter jurisdiction.  In support of its jurisdictional argument Omega asserts that:  (1) Bridges is not an original source of the information forming the basis of his complaint; (2) the allegations in the complaint do not establish an actual or material claim; and (3) the allegations in the complaint present merely potential liability.

*1. Whether Bridges is an Original Source*

Omega argues that jurisdiction does not lie in this court because Bridges is not an "original source" of the allegations and transactions contained in the complaint.  31 U.S.C. § 3730(e)(4)(A) provides that

> [n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

When transactions have been publicly disclosed as set forth in § 3730(e)(4)(A), a district court has jurisdiction to hear an FCA claim regarding those transactions only when the

plaintiff is an "original source" of the information that was publicly disclosed. 31 U.S.C. § 3730(e)(4)(A).

Bridges responds that jurisdiction properly lies in this court because the allegations and transactions set forth in his complaint were not publicly disclosed. Consequently, he argues, the FCA does not require him to be an "original source" of the allegations or transactions that form the basis of his complaint.

The Eighth Circuit's approach to addressing FCA claims and the issues of "public disclosures" and "original source" has been to answer four questions:

> (1) whether the alleged "public disclosure" [was made by or in] one of the listed sources;
>
> (2) whether the alleged disclosure has been made "public" within the meaning of the FCA;
>
> (3) whether the relator's complaint is "based upon" this "public disclosure"; and if so,
>
> (4) whether the relator qualifies as an "original source" under § 3730(e)(4)(B).

*Hays v. Hoffman*, 325 F.3d 982, 987 (8th Cir. 2003). In analyzing whether there was a public disclosure, the Eighth Circuit requires that the disclosure came from one of the sources specifically mentioned in 31 U.S.C. § 3730(e)(4)(A). *Id.* at 988 (holding that "[o]nly public disclosures from one of these enumerated sources may give rise to the FCA jurisdictional bar"). Under 31 U.S.C. § 3730(e)(4)(A), the following enumerated sources are the only sources of information that give rise to a jurisdictional bar: (1) a criminal, civil, or

administrative hearing; (2) a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation; or (3) a report of the news media.

After considering the arguments of the parties and reviewing the entire record and the relevant law, it is clear that jurisdiction properly lies in this court for two reasons.  First, the FCA does not require Bridges to be the original source of the information upon which his claim is based.  This is true because the allegations and transactions at issue in this case have not been publicly disclosed as enumerated in 31 U.S.C. § 3730(e)(4)(A).  Although Omega points to a number documents that are made public, including its contract with the government, its price list, its PNRs recording all of its government travel transactions, and the federal regulations under which it operates, these public documents do not fit into any of the categories of enumerated sources contained in 31 U.S.C. § 3730(e)(4)(A).

There is also a second reason that jurisdiction properly lies in this court.  Even if the allegations and transactions forming the basis of Bridges's complaint were publicly disclosed and Bridges were therefore required to show that he is an original source of the information, the record reflects that he is, in fact, an "original source" as defined by 31 U.S.C. § 3730(e)(4)(B).  An "original source" is "an individual who has direct and independent knowledge of the information upon which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).  Bridges qualifies as an "original source" because he has direct and independent knowledge of the information.  He was

personally involved with the transactions upon which his claims are based, and prior to filing this case, he was the one who provided the information to the government.

For these reasons, jurisdiction properly lies in this court and is not barred by 31 U.S.C. § 3730(e)(4)(A). Omega's motion to dismiss is therefore denied on this point.

*2. Whether Bridges's Allegations are Actual and Material*

Omega next argues that Bridges's allegations do not constitute a claim under 31 U.S.C. § 3729(a)(1) because the United States was never charged the higher fare price. Indeed, it asserts, in both instances herein, Bridges was never booked for the higher priced fare. This is a very close issue and it is readily admitted that a better developed case law would be extremely helpful; but, taking Bridges's allegations as true, they establish actual, material claims.

As stated above, 31 U.S.C. § 3729(a)(1) establishes liability for "[a]ny person who . . . knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." This section defines "claim" as

> any request or demand, whether under a contract or otherwise for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

The FCA does not require that the United States be fraudulently charged. Language contained in two United States Supreme Court decisions supports this interpretation. In *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968), the Court held that "the [FCA] reaches beyond 'claims' which might be legally enforced, to all fraudulent *attempts* to cause the Government to pay out sums of money." (emphasis added). Quoting *Neifert-White*, the Court, in *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003), maintained that " . . . Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that *might* result in financial loss to the Government.'" (emphasis added) (*Neifert-White*, 390 U.S. at 232).

Although, on its face, it is quite logical to reason that a claim was never made because the government was never actually billed the higher fare price, this reasoning does not seem to make practical sense. Omega's logic would in essence require dismissal of Bridges's claim unless he passively participated in Omega's alleged fraud, by knowingly accepting the fraudulently booked ticket and waiting for the government to be billed. Neither Bridges, who is an FBI agent, nor any other government employee should have to sit back and permit fraud to be perpetrated on the government in order to have a claim under the FCA. Neither the FCA, nor Supreme Court precedent, seems to support this position.

For these reasons, Omega's motion to dismiss is denied on this point.

*3. Whether Bridges's Claims Concern More than Potential Liability*

Omega maintains that to be liable it must have had, at the time of the alleged fraud, some monetary obligation to the United States. It bases its argument on language contained in *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997):

> To recover under the [FCA] . . . the United States must demonstrate that it was owed a specific, legal obligation at the time that the alleged false record or statement was made, used, or caused to be made or used. The obligation cannot be merely a potential liability: instead, in order to be subject to the penalties of the [FCA], a defendant must have a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgment of indebtedness.

That case, however, is distinguished from the present case because, in *Q International*, the Eighth Circuit was addressing the "reverse claims provision" of the FCA, and not one of the direct claim provisions such is at issue here. The reverse claims provision of the FCA, 31 U.S.C. § 3729(a)(7), allows a claim to be brought against a defendant who uses a false or fraudulent statement to avoid a monetary obligation owed to the United States. The key to a reverse false claims action is the monetary obligation to the United States that *precedes* the fraud. The fraudulent statement or record is made with the intent to avoid or decrease this preexisting monetary obligation. 31 U.S.C. § 3729(a)(7); *See also Q International,* 131 F.3d at 774; *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.,* No. 06-4091, 2009 WL 3353314, at *27 (E.D. La. Oct. 19, 2009); *United States ex rel. Janaki Ramadoss v. Caremark, Inc.*, 586 F.Supp. 2d 668, 685 (W.D. Tex. 2008).

At issue in this case is 31 U.S.C. § 3729(a)(1), which does not require the defendant to have a monetary obligation to the government. A plaintiff in a § 3729(a)(1) action must show that the defendant fraudulently received or attempted to receive payment from the

United States. This is very different from an assertion under § 3729(a)(7) that through fraud a defendant decreased or avoided a monetary obligation owed to the United States. Consequently, *Q International* is not applicable.

Omega's motion to dismiss is therefore denied on this point.

B. Failure to State a Claim: Whether the Facts Support a Claim for Fraud

Bridges has pled sufficient facts to support a claim for fraud. Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "This particularity requirement demands a higher degree of notice than that required for other claims. The claim must identify who, what, where, when, and how." *United States ex rel. Costner v. United States,* 317 F.3d 883, 888 (8th Cir. 2003). "This higher degree of notice 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)). Additionally, "If it alleges a systematic practice of submitting fraudulent claims, the FCA complaint 'must provide some representative examples of [the] alleged fraudulent conduct,' specifying 'the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was

obtained as a result.'" *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (quoting *United States ex rel. Joshi*, 441 F.3d at 556-57).

Omega maintains that Bridges has failed to state a claim because he has not pled sufficient facts to support a claim for fraud. In its motion, Omega focuses on various alleged errors in the complaint including citation to the wrong contract, citation to the wrong solicitation, and the omission of orders and regulatory guidance applicable to Omega. It further argues that Bridges has failed to present evidence above mere speculation that answers the questions, who, what, where, when and how.

Bridges's complaint satisfies the particularity requirement. Indeed, he provides July 19, 2007 and August 10, 2007 as the specific dates of the alleged fraud. He details the specific transactions upon which his claims are based including: the departure and arrival cities, the dates of the flights, the price of the Unrestricted Fare booked or quoted, the price of the Controlled Fare, and the text of an e-mail sent to him from Omega discussing one of the tickets. He also names one of Omega's employees as the person he communicated with concerning one of the transactions. This is sufficient to survive the heightened pleading requirements of 9(b), and the requirements of pleading a systematic practice of submitting fraudulent claims.

Omega's motion to dismiss is therefore denied on this point.

## IV. CONCLUSION

For all of the reasons set forth above, Omega's motion to dismiss [Doc. No. 33] is denied.

IT IS THEREFORE ORDERED this 18th day of December, 2009.

Brian S. Miller

UNITED STATES DISTRICT JUDGE